IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | CV-21-47-GF-BMM |
| Plaintiffs, | ORDER |
| v. | |
| LT. GEN SCOTT A. SPELLMON, et al., | |
| Defendants, | |
| and | |
| AMERICAN GAS ASSOCIATION, et al., | |
| Defendant-Intervenors, | |
| and | |
| STATE OF MONTANA, | |

**INTRODUCTION**

Plaintiffs Center for Biological Diversity, Sierra Club, Montana Environmental Information Center, Friends of the Earth, Waterkeeper Alliance

("Plaintiffs") filed this action against the U.S. Army Corps of Engineers ("Corps") and Lieutenant General Scott Spellmon (collectively, "Federal Defendants") for alleged violations of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., the Clean Water Act ("CWA"), 33 U.S.C. § 1344(e), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 in reissuing Nationwide Permit 12 ("NWP 12") during the final days of the Trump administration. (Doc. 1.)

## BACKGROUND

NWP 12 authorizes—without the need for a separate individual CWA permit—certain activities in waters of the United States associated with the construction, maintenance, repair, and removal of oil and gas pipelines. CWA Section 404 prohibits the discharge of dredged or fill material into "waters of the United States" without a Corps permit. *See* 33 U.S.C. § 1344(a). Section 404 originally authorized the Corps to issue only individual permits. Individual permits require a resource-intensive, case-by-case review, including extensive site- and permit-specific documentation and public comment. *See Id.* § 1344(e)(1); 33 C.F.R. pts. 323 and 325.

Accordingly, in 1977, Congress added CWA Section 404(e), creating a general permit program for minor, routine activities to avoid imposing unnecessary delay and administrative burdens on the public and the Corps. *See* 33 U.S.C. §

1344(e). Section 404(e) authorizes the Corps to issue general permits "for any category of activities involving discharges of dredged or fill material if the [Corps] determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." *Id.* § 1344(e)(1). General permits remain valid for no more than five years. *Id.* § 1344(e)(2). General permits also must comply with the CWA Section 404(b)(1) Guidelines promulgated by the U.S. Environmental Protection Agency ("EPA"). *Id.* § 1344(b)(1).

As with the individual permitting process, the Corps must comply with the ESA and NEPA when issuing a NWP. *See* 33 C.F.R. § 330.4(b)(2), (f). As relevant here, Section 7 of the ESA requires "action agencies," such as the Corps, to engage in consultation with the Fish and Wildlife Service and National Marine Fisheries Service ("Services") to "insure" that their actions are "not likely to jeopardize" the continued existence of listed species. 16 U.S.C. § 1536(a)(2).

Once a NWP has been issued, projects meeting the specific terms and conditions of a NWP may be constructed without even notifying the Corps. *See* 33 C.F.R. § 330.1(c), (e)(1). In some cases, however, applicants must submit a preconstruction notification ("PCN") to the Corps and defer construction until the district engineer verifies that the project meets the NWP's terms and conditions.

*See id.* §§ 330.1(e)(1), 330.6(a)(1). If the district engineer determines that the project does not comply with the NWP's terms and conditions, the Corps must deny verification. *See id.* § 330.6(a)(2). The applicant may then seek authorization under Section 404's individual permitting process. *Id.*

The Corps issued a set of nationwide permits—including a new NWP 12—in January 2021. 86 Fed. Reg. 2744. As reissued, NWP 12 authorizes the construction of oil and gas pipelines through rivers, streams and wetlands, so long as each "single and complete project" will not result in the loss of more than half an acre of U.S. waters. NWP000945. In the Decision Document for NWP 12, the Corps estimated that NWP 12 will be used for approximately 47,750 projects over its five-year lifespan and impact 3,160 acres of U.S. waters and wetlands. NWP001052. Generally, NWPs cannot be used more than once for any "single and complete project." 33 C.F.R. § 330.6(c). For linear projects like those authorized by NWP 12, however, the Corps defines "single and complete project" to apply to each individual water crossing. *Id.* § 330.2(i); NWP000038, NWP000072. Thus, for a single pipeline, NWP 12 can be used for multiple—indeed, an unlimited number of—water crossings without necessarily exceeding the half-acre threshold. *See* NWP000120-21.

NWP 12 requires the submission of a PCN "prior to commencing the activity" if, among other reasons, the "discharges [will] result in the loss of greater

4

than 1/10-acre of [CWA] waters of the United States," or a permit is required for crossing a navigable water. Unlike the prior 2017 NWP 12, the 2021 NWP 12 also requires a PCN if the Permit is sought to be used for construction of new pipeline greater than 250 miles in length. *Compare id. with* 82 Fed. Reg. 1860, 1986 (Jan. 6, 2017).

As with all the nationwide permits, NWP 12 was subject to public notice and comment, and the Corps prepared an Environmental Assessment (to consider the permit's potential environmental effects), conducted a public interest review, and completed an analysis under the Section 404(b)(1) Guidelines. *See* NWP000945–1078.

In addressing its ESA obligations for NWP 12, the Corps has once again relied on General Condition 18. This condition requires applicants to submit a PCN whenever a project "might affect" listed species or critical habitat. *See* NWP000104. Because of General Condition 18, the Corps asserted that the reissuance of NWP 12 would have "no effect" on listed species and that any such effects from individual projects would be analyzed on a project-specific basis. *See* NWP000105, NWP003596. The Corps therefore did not conduct any ESA consultation with the Services before it reauthorized NWP 12.

The Court previously determined that the 2017 reissuance of NWP 12 violated the ESA for failure to consult. *N. Plains Res. Council v. U.S. Army Corps*

*of Engineers*, 454 F. Supp. 3d 985, 992 (D. Mont. April 15, 2020) ("*Northern Plains*"). The Court stated plainly that the "Corps cannot circumvent ESA Section 7(a)(2) consultation requirements by relying on project-level review or General Condition 18." *Id.*

## ANALYSIS

**I.  The Court will transfer venue of this case to the United States District Court for the District of Columbia**

This case presents a unique issue. Plaintiffs challenge the reissuance of a permit that the Court previously vacated and remanded for lack of compliance with the ESA. Plaintiffs allege that the reissued permit suffers from precisely the same infirmities. The Court is confronted, however, with the question of whether the District of Montana represents a proper venue to determine the subsequent ESA claim. The Court determines that the District of Montana does not represent a proper venue and will transfer venue to the United States District Court for the District of Columbia for the reasons discussed below.

For claims against the United States or its officers or agencies, venue is proper in any judicial district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred," or "(C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e). No Defendant resides in the District of Montana, so the Court proceeds directly to 28 U.S.C §§ 1391(e)(B-C).

*28 U.S.C §§ 1391(e)(B)*

The District of Montana was plainly a proper venue to hear plaintiffs' ESA claim in *Northern Plains*. Plaintiffs challenged the 2017 NWP 12, which would have permitted the Keystone XL pipeline. *Northern Plains*, 454 F. Supp. 3d at 987. The Keystone XL pipeline posed a potential impact to ESA species in the State of Montana. Thus, a "substantial part of the events or omissions giving rise to the [ESA] claim occurred" in the District of Montana. 8 U.S.C. § 1391(e)(B). No such ESA species threat permitted by the 2021 NWP 12 has been demonstrated here.

Plaintiffs identify only one project that purports to use the challenged NWP 12 and that allegedly harms their interests in the District of Montana. (*See* Doc. 45-6 at 13) Plaintiffs' members state that they have an interest in, among other things, protecting "public health and the environment," related to the Corps' verification that activities associated with the Northwestern Energy Byron Pipeline's Yellowstone River crossing in Laurel, Montana. (*Id.*; Doc. 45-5 at 10-11) Plaintiffs identify no ESA species or critical habitat present in the Byron Pipeline project area.

Plaintiffs raise the compelling point that there is no publicly available information on how and where NWP 12 has been used since it was reauthorized. (Doc. 78 at 17.) The Corps does not publish a list of NWP 12 projects and requires no public notice when the Corps receives or approves PCNs. Plaintiffs note that

they have not received any information from a FOIA request to the Corps filed a year-and-a-half ago. (*Id.* at 17 n.3)

The Court is wary of finding that no events or omissions giving rise to the claim occurred in the District of Montana where the Plaintiffs lack information that should be publicly available. The Court must make its determination, however, on the facts before it. Plaintiffs carry the burden of demonstrating venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Given that no project has been identified that could impact ESA species or habitat in Montana, the Court determines that no substantial part of the events or omissions giving rise to Plaintiffs' ESA claim has occurred in the District of Montana.

### 28 U.S.C §§ 1391(e)(C)

Plaintiffs contend that Plaintiff Montana Environmental Information Center ("MEIC") confers venue as MEIS resides in Montana. *See* 28 U.S.C §§ 1391(e)(C). When venue is based a plaintiff's residence, that particular plaintiff must have standing to bring the claims asserted. *Immigrant Assistance Project of the L.A. Cnty Fed'n of Labor v. INS*, 306 F.3d 842, 867 n.20 (9th Cir. 2002). MEIC lacks standing to bring the ESA claim on its own.

To establish Article III standing, Plaintiffs must demonstrate an "'injury in fact' that is concrete and particularized," "fairly traceable to the challenged

action," and "likely" to be redressed by a favorable court decision. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Similar to venue, standing must be established separately "for each form of relief sought." *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006).

The Court determines that Plaintiffs' declarations prove sufficient to establish standing to bring an ESA claim generally. (*See, e.g*, Doc. 78-1 (Second Declaration of Mr. Hartl, providing an example of a recent NWP 12-authorized project that required formal consultation because it was deemed likely to adversely affect two listed bat species.)) Plaintiffs demonstrate that NWP 12-authorized projects were deemed likely to adversely affect listed species in both Kentucky and South Carolina (Docs. 78-1 & 78-2.)

MEIC fails to establish standing, however, to sue over the ESA claim. MEIC's members allege harms stemming only from the effect of the Byron Pipeline, which Plaintiffs have not demonstrated likely would affect ESA species or critical habitat. (*See* Docs. 45-5 & 45-6.) To establish standing, a Plaintiff must demonstrate that it is likely to suffer some injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992). MEIC has failed to demonstrate that its interest in endangered species would be harmed by the 2021 NWP 12. Given that MEIC, the only Montana-resident Plaintiff, cannot establish standing to maintain the ESA

claim, the District of Montana does not represent an appropriate venue for Plaintiffs' ESA claim.

*Conclusion*

Section 1404(a) of Title 28 provides that: "for the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district where it might have been brought." 28 U.S.C § 1404(a). The Court may transfer venue sua sponte, so long as the parties are first given an opportunity to present their views on the issue. *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986). The Parties addressed the venue and standing issues at oral argument on the summary judgment motions.

In *Northern Plains*, the Court recognized that the ESA claim predominates over the NEPA and CWA claims. *N. Plains Res. Council v. U.S. Army Corps of Engineers*, 454 F. Supp. 3d 985, 994-95 (D. Mont. April 15, 2020). This recognition arises, in large part, due to the very nature of ESA consultation. ESA consultation informs the NEPA process from the onset. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 924-26, 935-36 (9th Cir. 2008). The Court will not delay the merits of this case by dismissing the predominate ESA claim. The Court instead will transfer venue of this claim to the District of Columbia, where venue is proper under 28 U.S.C §§ 1391(e)(B).

**ORDER**

Accordingly, **IT IS ORDERED** that the Clerk of Court will **TRANFER VENUE** of this case to the United States District Court for the District of Columbia.

DATED this 18th day of August, 2022.

_____
Brian Morris, Chief District Judge
United States District Court