IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LT. GEN SCOTT A. SPELLMON, et al., <br><br> Defendants, <br><br> AMERICAN GAS ASSOCIATION, et al., <br><br> Defendant-Intervenor, <br><br> STATE OF MONTANA, <br><br> Defendant-Intervenor. | Case No: 22-cv-2586-CKK <br><br> **Plaintiffs' Response to Federal Defendants' Notice of Supplemental Authority** |

Plaintiffs Center for Biological Diversity *et. al.* hereby respond to Federal Defendants' June 12, 2025, Notice of Supplemental Authority concerning *Seven County Infrastructure Coalition v. Eagle County*, No. 23-975 (U.S. May 29, 2025). Federal Defendants omit key distinctions between *Seven County* and this case.

*Seven County* involved an environmental impact statement (EIS) by the Surface Transportation Board for an 88-mile railroad line for the transportation of oil in Utah. Slip op. at 2. The issue was whether the agency had to consider the "upstream" effects of oil drilling and the "downstream" effects of oil refining. Slip op. at 2-3. *Seven County* held that when the "effects of an agency action arise from a separate project – for example, a possible future project or one that is geographically distinct from the project at hand – NEPA does not require the agency to evaluate the effects of that separate project." Slip op. at 16. "Moreover, and importantly, the Board here possesses

1

no regulatory authority over those separate projects." Slip op. at 17.

The Corps' duty under NEPA to consider the environmental effects of NWP 12 is not affected by *Seven County*. Here, the "project at hand" is a nationwide permit authorizing construction of pipelines in thousands of waters and wetlands. NWP000945; NWP001052. Unlike *Seven County*, Plaintiffs are not arguing the Corps' environmental assessment (EA) should have considered the impacts of independent projects "separate in time or place." Slip Op. 18. Whether the Corps had "*regulatory authority over those separate projects*," Slip op. at 17 (emphasis added), is not at issue here, since the Corps has regulatory authority over the construction of pipelines in U.S. waters.

Indeed, the purpose of NWP 12 is to "authorize[] discharges of dredged or fill material into waters of the United States and structures or work in navigable waters for crossings of those waters associated with the construction, maintenance, or repair of oil and gas pipelines." 86 FR 2744, 2860. The Corps NEPA analysis, therefore, must cover the direct and indirect impacts of those activities in and to the navigable waters. *Seven County* does not alter that analysis.

In *Seven Counties* the "EIS identified and analyzed numerous 'significant and adverse impacts that could occur as a result' of the railroad line's construction and operation—including disruptions to local wetlands, land use, and recreation." Slip Op. 4. And the Supreme Court held that NEPA required the Board to consider the environmental effects of the railroad line's construction and operation. *Id.* at 18. The same applies here. NWP 12 entails direct and indirect impacts of pipeline construction, maintenance and repair. This includes: a) frac-outs, *i.e.* the inadvertent discharges of drilling fluid into waterways during pipeline construction; b) impacts to forested wetlands; and c) cumulative effects to water and wetlands of approving numerous pipeline water crossings near one another. Plaintiffs' Supp. Summ. J. Br. 17-19, ECF No. 108. Plaintiffs' arguments are therefore consistent with *Seven County*.

*Seven County* also does not foreclose Plaintiffs' claims that the Corps should have analyzed the risks and impacts of oil spills as foreseeable impacts of NWP 12. Plaintiffs' Supp. Summ. J. Br. 14-17, ECF No. 108. The Corps' duty under NEPA to consider the risks and impacts of oil spills from pipelines under NEPA is well-established as a *direct* effect of pipeline construction. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 131 (D.D.C. 2017), *aff'd*, *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032 (D.C. Cir. 2021), *cert. denied sub nom. Dakota Access, LLC v. Standing Rock Sioux Tribe*, 142 S. Ct. 1187 (2022). Furthermore, *Seven County* found that: "To the extent that . . . trains on the new line could pollute the air, NEPA dictated that the Board evaluate those effects." Slip op. 18. Like the direct effects associated with air emissions of the trains on the railway line that must be analyzed pursuant to *Seven County*, the potential oil leaks and spills of the pipelines into the waters and wetlands must be considered by the Corps when issuing NWP 12. Because the Corps has regulatory authority over whether, where, how and under what conditions the pipelines cross the waters, there is a "reasonably close causal relationship," Slip op. 17, between the permit and the impacts of oil spills into those waters.

This Court should also note that upon transfer to this Court, Plaintiffs waived their climate change/greenhouse gas claims, hence the impacts of the "downstream" burning of the oil carried by the pipelines is not at issue in this case. Plaintiffs' Supp. Summ. J. Br. 2, ECF No. 108.

Furthermore, while *Seven County* states that courts are required to give "substantial judicial deference" to agencies in NEPA cases, Slip op. 8, courts still have a "role" in "confirm[ing] that the agency has addressed environmental consequences and feasible alternatives." Slip op. 9. And, consistent with review under the "deferential arbitrary-and-capricious standard," courts still must ask whether "the agency action was reasonable and reasonably explained." *Id.* "So long as the EIS addresses environmental effects from the project at issue," that decision gets deference, Slip op. 1.

However, here the Corps' EA contains no analysis of the risk of oil spills or their impacts, the impacts of frac-outs, impacts of removal of forested wetlands or the cumulative effects of multiple pipeline crossings in close proximity. Therefore, no deference is warranted.

Regarding remedy, *Seven County* observed that a deficient EIS does not "necessarily require a court to vacate the agency's approval" of a project, in part because the "ultimate question is not whether an EIS … is inadequate, but whether the agency's final decision was reasonable and reasonably explained." Slip op. 14. Where there is no "reason to believe the agency might disapprove the project if it added more to the EIS," vacatur may be unnecessary. *Id.* Here, there is reason to believe that had the Corps performed a proper NEPA analysis it would not have re-issued NWP 12 with its current terms and conditions, and may have required more mitigation measures. As a result, vacatur is an appropriate remedy. *See* Plaintiffs' Reply in Support of Summ. J 59-64, ECF No. 78.

Respectfully submitted this 18th day of June 2025.

/s/ Jared Margolis
Jared Margolis (admitted pro hac vice)
Center for Biological Diversity
2852 Willamette St. # 171
Eugene, OR 97405
(802) 310-4054
jmargolis@biologicaldiversity.org
eglitzenstein@biologicaldiversity.org
*Attorney for Center for Biological Diversity, Friends of the Earth, and Waterkeeper*

/s/ Eric Huber
Eric Huber (admitted pro hac vice)
Sierra Club Environmental Law Program
1650 38th Street, Suite 102W
Boulder, CO 80301
(303) 449-5595
Eric.huber@sierraclub.org
*Attorney for Sierra Club and Montana Environmental Information Center*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing brief on all counsel of record via the Court's CM/ECF system.

/s/ Eric Huber